UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN C. ALLEN, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>　　　　Defendant. | No. 2:16-cv-00304-SAB<br><br>**ORDER GRANTING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT;<br>DENYING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT** |

　　　Before the Court are Plaintiff John C. Allen, Jr.'s Motion for Summary Judgment, ECF No. 13, and Defendant Commissioner of the Social Security Administration's Cross-Motion for Summary Judgment, ECF No. 17. The motions were heard without oral argument. Plaintiff is represented by Cathy Helman and Joseph Linehan, and Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Terrye Shea. For the reasons set forth below, the Court **grants** Plaintiff's motion, **denies** Defendant's motion, **reverses** the administrative law judge ("ALJ"), and **remands** for a determination of Social Security payments with an onset date of January 1, 2001.

### Jurisdiction

　　　On January 2, 2013, Plaintiff filed an application for disability insurance benefits. Plaintiff alleges an onset date of January 1, 2001.

　　　Plaintiff's application was denied initially and on reconsideration. On February 9, 2015, Plaintiff appeared and testified at a hearing held in Spokane,

Washington before an ALJ. The ALJ issued a decision on May 23, 2013, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on July 21, 2016. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on August 24, 2016. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 404.1574; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1571. If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT + 2**

have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1508-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 3

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. At the time of the hearing, Plaintiff was 44-years old. He lives in a trailer home with his wife of over twenty-four years. He functions in the low average range of intelligence and cannot read. He quit school after the eighth grade to train with his father as a mechanic.

Early in his career, Plaintiff worked in a radiator shop for about two years doing all of the floor work, including pulling radiators, heater cores, and gas tanks from cars for repairs, but quit because he was not paid enough. He then went to work for an automobile dealership. Plaintiff subsequently worked odd jobs to make a living, including some mechanic work.

Plaintiff testified that his lower back is the number one reason he believes he is unable to work; the pain began when he was working in the radiator shop. He takes pain medication twice a day, rather than four times a day as prescribed, because he does not want to become dependent. Because of his pain, he needs to get up and move about every twenty minutes. Plaintiff stopped working on cars because he has trouble standing up from a bent over position; he barely works on his own vehicles anymore unless they quit running. It may take Plaintiff all day to simply change the battery in his car. Plaintiff has trouble sleeping at night because of his pain and spends most of his day alternating between chores and relaxing.

Plaintiff also experiences pain in his knee, which gives out or pops out of place. He testified that he can stand for approximately an hour. One doctor recommended surgery, but Plaintiff is unsure whether this will keep the knee in place. He wears a brace at times, but it puts pressure on his knee causing pain. Plaintiff is responsible for maintaining his 7.8 acre property, much of which is left in its natural state. He used to chop firewood for his wood-heated house, but stopped because of the pain; he usually brings a grandson or nephew in to help. Plaintiff does a little yard maintenance at a time, taking all day to clean up after the dog or rake the yard surrounding his house.

Plaintiff also has carpal tunnel syndrome in his hands, primarily in his right, causing them to lock up in the middle of the night and sometimes during the day from reaching and grabbing. He underwent a nerve conduction study showing mild carpal tunnel syndrome on the right side and borderline carpal tunnel

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 5

syndrome on the left side, but surgery had not been recommended as of the February 9, 2015 hearing.

As part of his application for benefits, Jay Toews, Ed.D., conducted a psychological evaluation of Plaintiff, and did not find a history or evidence of psychological issues. Dr. Toews did find that Plaintiff functions in the low average to high borderline level of intelligence with relatively good non-verbal intellective skills and ability; he has limited education and an unskilled work history. Plaintiff's full scale IQ tested at 77, which is in the sixth percentile, and a General Ability index score of 80, in the ninth percentile. Dr. Toews concluded that Plaintiff has no cognitive, mood, or affective barriers to employment, but he is limited by his education and training and may have physical limitations affecting exertion levels.

### The ALJ's Findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 2, 2013. AR 21.

At step two, the ALJ found Plaintiff has the following severe impairments: degenerative joint disease of the right knee; left shoulder sprain; right carpal tunnel syndrome; degenerative disc disease of the lumbar spine; and borderline intellectual functioning. AR 21. He also has a non-severe impairment of right shoulder sprain. AR. 21.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR. 22.

The ALJ concluded that Plaintiff has the residual functional capacity to perform

> A full range of light work as defined in 20 CFR 416.967(b), except that he can only walk and stand 4 hours per day; he can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl, and can only occasionally perform all other postural activities; he can reach overhead on the left only occasionally; he can finger and handle on

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT + 6**

the right only frequently; he can have no exposure to unprotected heights and moving mechanical parts; he can have no concentrated exposure to irregular surfaces; and he is limited to simple, routine, repetitive tasks and to occasional contact with co-workers.

AR. 24. At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work. AR 29.

At step five, the ALJ found Plaintiff was not disabled on the basis that he could perform other work which exists in significant numbers in the national economy, including positions such as production assembler, electronics worker, and packing line worker. AR 30.

**Issues for Review**

1. Whether the ALJ properly evaluated the medical opinion evidence of Plaintiff's treating physician, Thomas J. Boone, MD; and

2. Whether the ALJ properly assessed Plaintiff's credibility.

**Discussion**

*1. Whether the ALJ properly evaluated the medical opinion evidence of Plaintiff's treating physician, Thomas J. Boone, MD.*

The ALJ is tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[1]; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating

---

[1] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 7

physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Dr. Boone is Plaintiff's treating physician. In January 2015, Dr. Boone opined that Plaintiff could lift up to ten pounds frequently and up to twenty pounds occasionally, and carry amounts up to twenty pounds occasionally; never lift or carry amounts over twenty pounds; sit, stand, and walk for thirty minutes at a time without interruption; sit for three hours, stand for one hour, and walk for one hour in an eight hour work day. With regard to Plaintiff's right hand, his dominant hand, Dr. Boone concluded that he can never reach, push or pull, and can frequently handle, finger, and feel. With regard to Plaintiff's left hand, Plaintiff can never reach overhead, feel, or push or pull, and can occasionally reach, handle, and finger. Dr. Boone also determined that Plaintiff can occasionally operate controls with his right foot, but never with his left.

individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT + 8**

Additionally, Dr. Boone opined that Plaintiff can never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl, and can only occasionally climb stairs and ramps. In terms of environmental limitations, Plaintiff can never be exposed to unprotected heights, moving mechanical parts, extreme cold or heat, and vibrations; can occasionally operate a motor vehicle and be exposed to dust, odors, and fumes; frequently be exposed to humidity and wetness; and have moderate exposure to noise. In noting that Plaintiff cannot read, Dr. Boone concluded that Plaintiff can perform all but three activities of daily living.

In the opinion, the ALJ gave Dr. Boone's opinion limited weight because the "checklist-style opinion appears to have been completed as an accommodation to [Plaintiff] and includes only conclusions regarding functional limitations without any rationale for those conclusions." AR 28-29. The ALJ noted that Dr. Boone only accounted for five hours of an eight hour day and provided no explanation as to what Plaintiff could do for the remaining three hours. Additionally, the ALJ concluded that Dr. Boone's opinion was written in haste because he accounted for Plaintiff's limitations in minutes, rather than hours. Nonetheless, the ALJ inferred that Dr. Boone meant to write hours when he mistakenly wrote minutes and concluded that Dr. Boone intended to say that Plaintiff could work five hours of an eight hour work day. Ultimately, the ALJ determined that Dr. Boone's opinion has "no probative value because it is not supported by any objective evidence or explanation." AR 29.

Instead of giving controlling weight to Dr. Boone's medical opinion as Plaintiff's treating physician, the ALJ credited the opinion of Gary Gaffield, D.O., a consultative evaluator, with great weight. AR 27. In a March 30, 2013 report, Dr. Gaffield noted that Plaintiff had restricted motion of the lumbar spine without spasms or crepitus, restricted cervical motion, and slight scoliosis apex to the right in the upper thorax with slightly elevated right shoulder. AR 418. Dr. Gaffield also observed that the medial right epicondyle was sensitive to the touch, left shoulder

weakness, and marked weakness of the right knee with restricted motion and positive collateral ligaments. *Id.* He noticed that Plaintiff limps when he bears weight on his right lower extremity, is unable to walk on his heels or the balls of his feet, and unable to hop, bend, or squat due to right knee pain. AR 419. Accordingly, Dr. Gaffield diagnosed Plaintiff with back pain with mild scoliosis of the thoracic spine; weakness of his right knee; left shoulder weakness; and right elbow pain by history. AR 420.

Dr. Gaffield determined that Plaintiff could walk and/or stand for four hours, limited by his knee condition; lift and carry not more than twenty pounds occasionally and ten pounds frequently; perform postural activities occasionally; and only occasionally climb a single flight of stairs or a slight incline plane. AR 420-421. Plaintiff needs to avoid scaffolding, working overhead and on heavy equipment, obstacles in his pathway, irregular surfaces, and the need to frequently climb stairs or ladders; the foregoing limitations are because of back issues and weakness of Plaintiff's right knee. AR 421. The ALJ gave great weight to Dr. Gaffield's opinion as generally consistent with the record. However, the ALJ gave more limitations to Plaintiff's postural activities and manipulative limitations. AR 27.

In the opinion, the ALJ did not lay out the standard for discounting the opinion of a treating physician; nor does the ALJ explain why examining physician Dr. Gaffield's opinion is more persuasive than Dr. Boone's. Because the ALJ did not find that Dr. Boone's opinion was contradicted, the ALJ may only reject it for clear and convincing reasons. *See Magallanes*, 881 F.2d at 753. In so doing, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 10

The ALJ spent no time discussing the length, nature, or extent of the treating relationship between Plaintiff and Dr. Boone. Indeed, there is no indication that the ALJ considered the lengthy treatment notes from Dr. Boone relating to his treatment of Plaintiff for over a year prior to the February 9, 2015 hearing. During the treating relationship, Dr. Boone saw Plaintiff regularly and diagnosed him with carpal tunnel syndrome, chronic fatigue syndrome, osteoarthritis of the lower leg, and lumbrosacral spondylosis. Dr. Boone ordered x-rays, an MRI, nerve conduction study, physical therapy, and prescribed medications for Plaintiff. Although Dr. Boone did not state the objective medical reasons in his January 2015 evaluation, he had been treating Plaintiff on a regular basis for over a year and was familiar with Plaintiff's limitations.

Moreover, Dr. Boone's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," thus, it should have been given controlling weight. *Orn*, 495 F.3d at 631. For instance, Dr. Boone's conclusion that Plaintiff was limited in his ability to sit, stand, and walk is supported by several evaluations wherein Dr. Boone noted tenderness and palpitations in Plaintiff's back and treated Plaintiff for spondylosis with medication and physical therapy, as well as Plaintiff's lack of success at physical therapy. Additionally, x-rays taken of Plaintiff's lower back confirmed that he experienced straightening of the normal lumbar lordosis and mild multilevel congenital narrowing of the spinal canal secondary to short pedicles, L5-S1 disc degeneration, and L4-5 extraforaminal disc protrusion and L5-S1 central disc protrusion. These x-rays were performed after Dr. Gaffield evaluated Plaintiff. Dr. Boone's assessment is bolstered by Plaintiff's reported pain levels and Plaintiff's testimony that his lower back is the primary reason he cannot work; he cannot lean over or sit for very long, and needs to get up and move approximately every twenty minutes.

Furthermore, the record reflects that Plaintiff must consistently take narcotic medications to manage his pain, which prevents him from sleeping at night.

As for Plaintiff's right knee, an MRI taken on May 6, 2014 showed chronic complete ACL tear and undersurface tear medial meniscus posterior horn and small peripheral tear at the posterior horn/body injunction. AR 485. Plaintiff testified that his right knee pops out of place, making it painful to walk. He can stand for approximately an hour and he had to stop chopping firewood to heat his wood-heated house because of this pain. The record supports Dr. Boone's conclusion that Plaintiff can stand for only an hour and can never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl, and can only occasionally climb stairs and ramps. Dr. Gaffield concurred that Plaintiff has significant limitations because of his knee issues. Consequently, Dr. Boone's findings are consistent with the medical opinions of examining physicians and not inconsistent with substantial evidence in the record.

For the reasons stated above, the ALJ committed reversible error by discounting the opinion of Plaintiff's treating physician and favoring the opinion of a consultative examining physician without providing clear and convincing reasons for doing so.

*2. Whether the ALJ properly assessed Plaintiff's credibility.*

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 12

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186. Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict his other testimony, or (2) Plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))

The ALJ found Plaintiff only partially credible. In the opinion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ stated that Plaintiff "has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." AR 29. The ALJ gave two reasons for this finding: (1) Plaintiff testified that he maintains his property with only minimal assistance; and (2) Plaintiff has not been entirely

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 13

compliant in taking his prescribed medications. For the reasons discussed below, the ALJ's credibility determination was made in error.

First, the ALJ mischaracterized Plaintiff's testimony that he maintains his property with only minimal assistance. Rather, Plaintiff testified that he lives on 7.8 acres of property, but is only living on an acre and a half; the rest is left in its natural state. AR 83. Plaintiff will clean up after the dogs and rake the yard; this takes him all day with the frequent rest breaks he requires. *Id.* Plaintiff can no longer chop firewood to heat his wood-heated house; he brings in one of his grandsons or nephews to help with that chore, although he can carry the firewood inside when needed. AR 84. Plaintiff further testified that he stopped working on his cars because of his back pain; he cannot stand up from a bent over position. This is not indicative of an individual who can adequately maintain his property with only minimal assistance.

The Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Recognizing that claimants should not be penalized for attempting to lead their normal lives, "only if Plaintiff's level of activity is inconsistent with his claimed limitations would these activities have any bearing on his credibility." *Id.* Plaintiff's testimony regarding his daily activities is consistent with his limitations. Plaintiff takes all day to complete chores because of his pain, taking frequent breaks, and requires assistance to chop firewood to heat his home. Plaintiff cannot work on his cars any more due to his back pain. Raking the lawn or cleaning up after the dogs takes him all day. This testimony is consistent with Plaintiff's limitations that he can stand for only an hour at a time and must alternate positions approximately every twenty minutes and that he can only walk as far as from his home to his car before he

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 14

requires a rest break. The ALJ's conclusory finding that Plaintiff maintains his property with only minimal assistance is erroneous and inconsistent with Plaintiff's testimony. Moreover, Plaintiff's daily activities are not inconsistent with his described limitations and the ALJ improperly discredited Plaintiff in this respect.

The ALJ further stated that Plaintiff has not been entirely compliant in taking his prescribed medications, suggesting that his symptoms may not be as limiting as alleged. The ALJ thought it significant that Plaintiff only takes pain medication twice per day because "he does not like taking medication." AR 29. The Ninth Circuit has held that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may "cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603. However, where a claimant stops taking pain medication for a period of time, not for lack of need for treatment, but secondary to fears of building a tolerance and becoming addicted, the ALJ should consider the proffered explanation in making a credibility determination. *Norris v. Colvin*, 160 F. Supp. 3d 1251, 1278 (E.D. Wash. 2016).

Here, Plaintiff testified that he has been taking his pain medication since it was first prescribed by his doctors. He takes medication in the morning and at night. Plaintiff testified that his doctors told him to take more, but he is "trying not to rely on [pain medication]." AR 77. A reasonable interpretation of Plaintiff's testimony is that he is concerned about becoming dependent on pain medication. In the opinion, the ALJ did not consider Plaintiff's proffered reason for taking less medication than prescribed: he does not want to become dependent on pain medication. Because the ALJ failed to consider Plaintiff's legitimate reason for failing to take his medication as prescribed, the ALJ's determination that Plaintiff does not have the limitations he claims was error. *See Norris*, 160 F. Supp. 3d at 1278.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT + 15**

The record simply does not support the ALJ's credibility determination. Plaintiff's testimony regarding his daily activities is consistent with his testimony about his functional limitations, particularly in regard to his back and knee pain. Additionally, Plaintiff explained that he does not want to become dependent on his pain medication, so he only takes it two times per day rather than four times per day as prescribed. This explanation does not indicate that Plaintiff does not require pain medication to manage his symptoms and the ALJ erred in finding to the contrary.

**Conclusion**

Here, the ALJ erroneously rejected medical opinion evidence and Plaintiff's symptom testimony; if this evidence had been properly credited, Plaintiff would have been found disabled. A review of the record as a whole, including the testimony of the vocational expert in concert with the properly-credited opinion of the treating physician, creates no legitimate doubt that Plaintiff is disabled within the meaning of the Social Security Act. Further administrative proceedings will not be useful and there are no outstanding issues to consider. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits. *Garrison*, 759 F.3d at 1019-20.

//
//
//
//
//
//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 16

Accordingly**, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** for an award of benefits, with a disability onset date of January 1, 2001.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 21st day of June, 2017.



Stanley A. Bastian
United States District Judge